UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF JONATHAN MANOLIOS,
GEORGE MANOLIOS, and SUSAN MANOLIOS,

       Plaintiffs,

                                   Civil Case No. 17-12277
v.                                Honorable Linda V. Parker

MACOMB COUNTY,
ANTHONY WICKERSHAM, DAVID KENNEDY,
JASON ABRO, RENEE YAX, and
DAVID CRABRTREE,

       Defendants.
_____/

## OPINION AND ORDER

### Introduction

       This matter is before the Court on motions for judgment on the pleadings

filed by Defendants, except Macomb County, pursuant to Federal Rule of Civil

Procedure 12(c).  (ECF Nos. 13, 15, 21, 24, 25.)  Plaintiffs filed responses to the

motions.  (ECF Nos. 17, 19, 22, 28, 29.)  No reply briefs were filed.  On April 25,

2018, the Court held a hearing with respect to the pending motions.  Thereafter,

Plaintiffs filed a supplemental brief regarding the issue of whether a defamation

claim survives the death of a minor, to which Defendants filed a response brief.

(ECF Nos. 32, 33.)

## **Background**[1]

This lawsuit arises from Defendants' investigation of a May 8, 2015 accident involving a 2008 Jaguar, in which three of the five occupants died. The occupants were all teenaged boys. The accident occurred in Stoney Creek Metro Park, where the driver lost control of the vehicle, causing the vehicle to leave the roadway, flip, and land in a river. Four of the five occupants were ejected from the vehicle, including Jonathan Manolios. Three of the ejected occupants (Jonathan Manolios, Emmanual Malaj, and Michael Wells) were killed. One of the boys, Gregory Bobchick, who was wearing a seat belt, was found alive inside the vehicle. The two surviving boys, Bobchick and Joseph Narra, were transported to the hospital.

All of the boys had consumed alcohol before the accident, with blood alcohol levels recorded after the accident ranging from .024 and .086. Jonathan Manolios had the lowest blood alcohol. However, because his name was incorrectly placed on the vial of blood that tested at .086, his level was inaccurately reported initially. Plaintiffs only obtained the documentation reflecting the correct blood alcohol level for Manolios in late May 2017. (Compl. ¶ 45, ECF No. 1 at Pg ID 17.) Marijuana also was detected in Bobchick's system and a small amount of benzodiazepine was found in Narra's system.

---

[1] Unless noted otherwise, the facts are gleaned from the allegations in Plaintiffs' Complaint.

Plaintiffs are the estate and parents of Jonathan Manolios, one of the ejected occupants who was killed. Defendants are Macomb County, Macomb County Sheriff Anthony Wickersham, and Macomb County police officers Jason Abro, David Kennedy, Renee Yax, and David Crabtree.

The Macomb County Sheriff's Department concluded from their investigation that Manolios was driving the Jaguar when it crashed. Sheriff Wickersham identified Manolios as the driver during a press conference concerning the accident. He also reported the incorrect blood alcohol level for Manolios during this press conference. Plaintiffs allege that, as a result of this misinformation, they were denied the benefits of a Prudential Life Insurance policy which excludes from coverage death caused by the driving of a motor vehicle while under the influence of liquor. (*Id.* ¶ 46, Pg ID 18.)

Coverage under the Prudential Life Insurance policy was the subject matter of another federal lawsuit: *Brosnan v. The Prudential Life Insurance Co. of Am.*, Civil Case No. 17-10364 (E.D. Mich. filed Feb. 3, 2017) ("the insurance dispute"). In their Complaint in the present matter, Plaintiffs indicate that the insurance dispute was dismissed without prejudice to allow Plaintiffs the opportunity to present additional evidence to Prudential to prove that Jonathan Manolios was not the driver of the vehicle. (Compl. at 18 n.6, ECF No. 1 at Pg ID 18.) At the motion hearing, Plaintiffs' counsel informed the Court that Prudential ultimately

3

concluded that Jonathan was not the driver of the Jaguar when it crashed and provided coverage under the life insurance policy.

Plaintiffs contend that Joseph Narra was driving the Jaguar when the accident occurred. They assert that Defendants conspired to conceal this fact because Defendant Abro is, "upon information and belief", a family friend of the Narra family. Plaintiffs allege that Defendants ignored evidence indicating that Narra was the driver, tampered with evidence that would have helped identify the driver, and refused to investigate the accident or turn the matter over to the Michigan State Police to correctly identify the driver.

After the accident, Jonathan Manolios' parents asked Defendants where their son's body was found in relation to the crash scene. According to Plaintiffs, they sought this information because their religious beliefs required them to memorialize the location. Plaintiffs allege that Defendant Kennedy initially refused to provide this information, but then inaccurately identified the location (identifying instead where Emmanual Malaj's body was recovered).[2]

_____

[2] Although not properly considered in deciding a Rule 12(c) motion, Defendant Kennedy asserts in his motion that the incorrect location was provided because Jonathan Manolios' father, Plaintiff George Manolios, identified the wrong body as his son's at the morgue. (*See* ECF No. 15 at Pg ID 164.) As a result, Kennedy provided Jonathan's parents with the location where Emmanual Malaj's body was found. (*Id*.) Apparently, this misidentification also resulted in Malaj's body being sent to the Manolios' funeral home in lieu of Manolios' body. (*See* ECF No. 19 at Pg ID 242.) Plaintiffs contend that Defendant Kennedy's assertion is false and that Manolios' mother "vehemently told Defendant Kennedy that the boy Kennedy

Plaintiffs do not allege any further actions by Kennedy, specifically, in their Complaint. They do allege, however, that he and Sheriff Wickersham "were at all relevant times supervisory personnel with (or acting for) oversight responsibility for, and personal involvement in, the training, hiring, screening, instruction, supervision, and discipline of individual law enforcement Defendants." (Compl ¶ 78, ECF No. 1 at Pg ID 26.) The only specific conduct Plaintiffs allege Wickersham engaged in is the press conference concerning the accident where Jonathan Manolios was identified as the driver and his blood alcohol level was incorrectly stated. (*Id*. at Pg ID 4-5.)

Aside from identifying him as a Macomb County police officer (*see id.* ¶ 4, Pg ID 8), Plaintiffs refer specifically to Defendant Abro only four times in their Complaint. First, they allege that because of his purported relationship with the Narra family, "Abro inserted himself in this matter (even though the crash was not in his bailiwick) so as to ensure that the actual driver of the automobile (Joseph Narra) … was not prosecuted for the serious crimes that were committed that evening." (*Id*. ¶ 2, Pg ID 3.) Similarly, they allege that Abro appeared at the hospital the night of the accident even though he was not on duty. (*Id.* ¶ 29, Pg ID 12.) According to Plaintiffs, that evening, Abro had Joseph Narra's mother sign a

_____

presented as Jonathan Manolios was not her son." (*Id*. at Pg ID 244.) Plaintiffs also state: "Despite this protestation, Defendant Kennedy signed the identification notification form." (*Id*.)

Consent to Search form to allow the hospital to release Narra's toxicology results to the sheriff's office, even though Narra had turned 18 years of age the day before the release was signed. (*Id.* ¶ 2, Pg ID 3; *see also* Pg ID 4 at n.1) Finally, Plaintiffs allege that Defendant Abro ordered the roof of the Jaguar cut-off, "[w]ith no legitimate purpose other than to destroy the deployed air bags so that DNA testing could not be performed …." (*Id.* ¶ 33, Pg ID 14.)

With respect to Defendant Yax, aside from identifying his employment with the Macomb County Sheriff's Department (*id.* ¶ 7, Pg ID 9), Plaintiffs specifically allege only that he and Defendant Crabtree failed to question two individuals who last saw the occupants of the vehicle before the crash and that Yax withheld the witnesses' statements from the official case file and only turned them over in October 2016 pursuant to a show cause order. (*Id.* ¶ 35, Pg ID 15.) According to Plaintiffs, one of these witnesses described the driver as having a dark complexion and dark hair and of Chaldean ancestry (like Narra). (*Id.*) Plaintiffs further allege that the other witness described seeing "a very happy young man in the back seat wearing a white shirt (Manolios was the only occupant with a white shirt)." (*Id.*) The allegation concerning the failure to personally interview the two witnesses is the only specific allegation Plaintiffs assert as to Crabtree, aside from referencing his employment as a county police officer. (*Id.* ¶¶8, 35.)

Plaintiffs list fifteen counts in their Complaint alleging violations of their constitutional rights under 42 U.S.C § 1983 and state law.  Generally, Plaintiffs state:

> It is alleged that Defendants framed the Plaintiff's [sic] decedent for causing this tragic motor vehicle accident on May 8, 2015.  Although declared to be so, the decedent was not the driver of the vehicle. Defendants acted with gross negligent conduct toward Plaintiff [sic], and/or violated their rights under United States law, Michigan statutory law and common law.  It is further alleged that these Defendants, while acting under color of law and in the scope of their employment as police officers, deprived Plaintiff [sic] of the right to be free from malicious prosecution, deprived Plaintiff [sic] of their right to due process, deprived Plaintiff [sic] of their right to trial, deprived Plaintiff [sic] of their right to free speech and religious practices as well as depriving Plaintiff [sic] of their access to Court; all of which thereby violates their Constitutional rights.

(Compl. ¶ 2, ECF No. 1 at Pg ID 7.)  Plaintiffs label the counts of their Complaint as follows:

> (I) Violations of procedural and substantive due process under 42 U.S.C. § 1983 against all individual defendants;
>
> (II) Violation of equal protection of laws of the Fourteenth Amendment;
>
> (III)[3] Failure to intervene under 42 U.S.C. § 1983;
>
> (IV) Claim for supervisory liability against named supervisors under 42 U.S.C. § 1983;
>
> (V) Conspiracy to deprive plaintiffs of constitutional rights under 42 U.S.C. § 1983;

---

[3] This count is mislabeled as a second "Count II".

(VI) Claims against Macomb County for unconstitutional policies/ customs/practices, and/or failure to act/train under 42 U.S.C. § 1983;

(VII) Violation of Plaintiffs' access to court under the First, Sixth, and Fourteenth Amendment[s];

(VIII) False light--invasion of privacy violation of constitutional right of privacy;

(IX) Violation of Plaintiffs' First Amendment right to practice their religion;

(X) Defamation/Defamation per se;

(XI) Neglect of Duty-Defendant Wickersham;

(XII) Intentional, reckless, or negligent infliction of emotional distress against all individual defendants;

(XIII) Civil conspiracy under Michigan common law;

(XIV) Abuse of process under Michigan common law; and

(XV) Negligence/gross negligence/recklessness against all individual defendants.

(ECF No. 1, capitalization removed.)

### Defendants' Motions to Dismiss & Plaintiffs' Responses

In each of their Rule 12(c) motions, Defendants raise many of the same arguments. First, Defendants point out that the allegations in Plaintiffs' Complaint concerning each individual defendant's involvement in any conduct is limited and that Plaintiffs instead refer improperly to "Defendants" generically to set forth the basis for their claims. Second, Defendants assert that qualified immunity shields

them from liability for the claims asserted against them.  Third, to the extent they are sued in their official capacities, Defendants argue that they are the alter-ego of Defendant Macomb County and thus the claims are duplicitous.  Finally, to the extent Plaintiffs' Complaint pleads any particularized factual basis to assert a claim against them, Defendants argue that those claims fail to state a claim upon which relief may be granted.

In response, Plaintiffs first argue that Defendants' motions are untimely because they were filed after Defendants filed Answers to the Complaint. Plaintiffs next argue—presumably to excuse their failure to allege each individual's actions causing the alleged constitutional violations—that each of the defendants was part of a conspiracy to deprive Plaintiffs of their constitutionally protected rights.  Plaintiffs argue that the Court must look at the Complaint in its totality and that the individual defendants would have "specific involvement or culpability in this actions" for the averments relating generally to "Defendants". (*See, e.g.*, ECF No. 17 at Pg ID 200.)  Plaintiffs contend that their official capacity claims remain viable against the individual defendants as supervisors or official policymakers.  Lastly, Plaintiffs assert arguments for why the claims attacked by Defendants have merit.

## Standard of Review

A Rule 12(c) motion for judgment on the pleadings is subject to the same standards of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 , 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-66). Although a court ruling on a Rule 12(b)(6) motion "primarily considers the allegations in the complaint," matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be considered. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted).

### Timeliness of Defendants' Motions

Contrary to Plaintiffs' argument, Defendants' motions to dismiss are timely filed as they are not brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

Instead, Defendants expressly cite Rule 12(c).  Rule 12(c) motions may be filed

"[a]fter the pleadings are closed ...."  Fed. R. Civ. P. 12(c).  As such, the motions

did not need to be filed before a responsive pleading.

## Constitutional Violations

To establish personal liability under § 1983, the plaintiff must show that

each defendant charged "caused the deprivation of a federal right."  *Kentucky v.

Graham*, 473 U.S. 159, 166 (1985).  Stated differently, "a plaintiff must plead that

each Government-official defendant, through the official's own individual actions,

has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Copeland v. Machulis*, 57

F.3d 476, 481 (6th Cir. 1995) (personal involvement by the defendant is an

essential element in a § 1983 cause of action asserting a constitutional deprivation).

Plaintiffs attempt to avoid this requirement by asserting that Defendants

were engaged in a conspiracy to violate their constitutional rights.  A conspiracy

claim, however, "must be pled with some degree of specificity" and "vague and

conclusory allegations unsupported by material facts will not be sufficient to state

such a claim under § 1983."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir.

1987) (citing *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984) (upholding the

district court's dismissal of the plaintiff's conspiracy claim where the "complaint

merely alleged broad conclusory negligence language void of the factual

allegations necessary to support a conspiracy theory")).  Evidence of a conspiracy requires the following proof:

> (1) a "single plan" existed, (2) [the defendants] "shared in the general conspiratorial objective" to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused injury to [the plaintiff]."

*Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).

Plaintiffs' allegations in support of their conspiracy claim are vague and conclusory.  (*See* Compl. ¶¶ 86-89, ECF No. 1 at Pg ID 28-29.)  While Plaintiffs allege that Abro was friends with Narra's family, they allege no facts to suggest that the remaining Defendants were part of a plan to conceal Narra's identity as the driver of the Jaguar.  In fact, Plaintiffs do not allege that the remaining defendants were aware of Abro's relationship with Narra's family.  Further, Plaintiffs fail to identify the individual(s) responsible for many of the acts they list to demonstrate circumstantial evidence of an agreement to misidentify the driver.  Plaintiffs allege nothing more than naked assertions of an agreement to deprive them of their constitutional rights.  But even if Plaintiffs adequately alleged a conspiracy, they fail to allege facts to establish a viable violation of their federal constitutional or statutory rights.

## 42 U.S.C. § 1983 Generally and Qualified Immunity

Section 1983 is a remedial statute which does not itself create independent

substantive legal rights.  Section 1983 simply provides a vehicle by which a person

may recover damages for a violation of his rights secured to him by federal law.

*Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).  To state a viable claim under

§ 1983, a plaintiff must allege: (1) he was deprived of a right, privilege, or

immunity secured by the Constitution or laws of the United States; and (2) the

deprivation was caused by a person while acting under color of state law.  *Flagg*

*Bros. Inc. v. Brooks*, 436 U.S. 149, 155-156 (1978); *Handy-Clay v. City of*

*Memphis*, 695 F.3d 531, 539 (6th Cir. 2012); *Brock v. McWherter*, 94 F.3d 242,

244 (6th Cir. 1996).  To maintain a cause of action for damages under the statute, a

plaintiff must also allege that the defendant caused the plaintiff an injury and show

actual damages.  *See Carey v. Piphus*, 435 U.S. 247, 255 (1978); *Chatman v.*

*Slagle*, 107 F.3d 380, 384 (6th Cir. 1997); *Horn v. Madison Cty. Fiscal Court*, 22

F.3d 653, 659 (6th Cir. 1994).

Qualified immunity "shields 'government officials performing discretionary

functions … from civil damages liability as long as their actions could reasonably

have been thought consistent with the rights they are alleged to have violated.'"

*Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting

*Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  Once raised, the plaintiff bears

the burden of showing that a defendant is not entitled to qualified immunity.

*Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

A court makes two inquiries when determining whether a defendant is entitled to qualified immunity: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right[,]" and (2) was the right "clearly established" to the extent that "it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Although the *Saucier* Court mandated that these questions be addressed in order, that requirement has since been relaxed. *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").

With regard to the second step,

[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640 (citations omitted). When deciding whether a constitutional right is clearly established, a court in the Sixth Circuit must "'look

first to decisions of the Supreme Court, then to decisions of th[e Sixth Circuit] and other courts within [the] circuit, and finally to decisions of other circuits.'" *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) (quoting *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991)).  The court must "examine the asserted right at a relatively high level of specificity[,]" and "on a fact-specific, case-by-case basis[.]" *Cope v. Heltsley*, 128 F.3d 452, 458–59 (6th Cir. 1997) (citations and internal quotation marks omitted).  When deciding whether officers are entitled to qualified immunity, "the [c]ourt considers only the facts that were knowable to the defendant officers." *White v. Pauly*, -- U.S. --, 137 S. Ct. 548, 550 (2018) (citing *Kingsley v. Henrickson*, 576 U.S. --, --, 135 S. Ct. 2466, 2474 (2015)).

### Due Process

In Count I of their Complaint, Plaintiffs assert substantive and procedural due process violations.  Plaintiffs must establish the existence of a constitutionally protected life, liberty, or property interest to prove either violation.[4]  *Pratter v. City*

---

[4] To state a substantive due process claim under § 1983, the plaintiff must allege facts establishing that "(1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008).  To establish a procedural due process violation, the plaintiff must satisfy three elements: (1) "a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment"; (2) the "depriv[ation] of that protected interest within the meaning of the due process clause"; and (3) Defendants' failure to afford "adequate procedural rights before [the deprivation]."

*of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002); *see also Bertovich v. Vill. of Valley View, Ohio*, 431 F. App'x 455, 459-60 (6th Cir. 2011) (stating elements of a substantive due process claim); *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010) (stating elements of a procedural due process claim). While Plaintiffs do not specifically identify in their Complaint the "liberty" and "property" interests they assert Defendants violated, they refer in Count I to the adequacy of Defendants' investigation of the accident, harm to Plaintiffs' reputations, and "their right to a fair trial before being wrongfully accused of having committed serious felonies." (Compl. ¶¶ 54, 56, 58, ECF No. 1 at Pg ID 20-21.) When the Court asked Plaintiffs' counsel at the motion hearing to explain the basis of Plaintiffs' due process claims, counsel responded that it "would be a personal animus towards the plaintiffs, pinning this accident on the decedent versus the driver that night."

Plaintiffs' due process claims cannot survive Defendants' motions to dismiss to the extent they are premised on Defendants' alleged improper investigation. *See Mitchell v. McNeil*, 487 F.3d 374, 376-77 (6th Cir. 2007); *Bertovich*, 431 F. App'x at 456, 459-60. In *Mitchell*, the court held that the plaintiff could not state a viable substantive due process claim based on the defendant officers' alleged failure to adequately investigate an accident in which the plaintiff's child died after being

---

*Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010) (citing *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)).

struck by the personal vehicle of a police officer being driven by a police informant. *Id*. at 378-79. The court reasoned: "There is no statutory or common law right, much less a constitutional right, to an investigation." *Id*. at 378 (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (observing that a "private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another")). The *Mitchell* court further reasoned that "even if there was such a right," the plaintiffs' claim would fail because they could not show that "the absence of an investigation *after* the accident" caused injury to their decedent. *Id*. at 379.

The Sixth Circuit reached a similar conclusion in *Bertovich*, where the plaintiff alleged that officers "deliberately failed to conduct a proper investigation" of a bar fight when they learned that the assailant was an auxiliary police officer. 431 F. App'x at 456, 459-60. The court reasoned that "individuals have no 'judicially cognizable interest in the prosecution or nonprosecution of another[,]'" *id*. at 460 (quoting *Diamond v. Charles*, 476 U.S. 54, 64 (1986)), and "'no statutory or common law right, much less a constitutional right, to an investigation.'" *Id*. (quoting *Mitchell*, 487 F.3d at 378). The court found that the plaintiff had no liberty or property interest impaired as a result of the defendants' failure to properly investigate the incident. *Id*. at 459 n. 7. Similarly here,

Plaintiffs identify no liberty or property interest impaired as a result of Defendants' alleged improper investigation of the accident.

Plaintiffs cite a number of cases to show that their due process claims are viable. (*See, e.g.*, ECF No. 29 at Pg ID 449-453.) However, in the cases Plaintiffs cite, the defendants' alleged improper investigation led to the prosecution and/or detention of the plaintiff. For example, in *King v. Harwood*, 852 F.3d 568 (6th Cir. 2017), the plaintiff asserted a malicious prosecution claim against the defendants, asserting that their improper investigation led to his wrongful murder conviction. *Id.* at 579 (recognizing that the plaintiff's claim was "based upon a malicious prosecution claim"). Similarly, in *Wilson v. Lawrence County*, 260 F.3d 946 (8th Cir. 2001), although evaluated as a substantive due process claim under the Fourteenth Amendment rather than a Fourth Amendment malicious prosecution claim, the plaintiff was complaining about the defendants' improper investigation that led to his arrest and conviction for murder.

The Eighth Circuit's decision in *Wilson* makes clear that the viability of the plaintiff's claim turned not simply on the failure of the defendants to investigate other leads or the use of false evidence, but the resulting injury to the plaintiff's liberty interest. *See id.* at 956 n. 8. As the court explained:

> It almost goes without saying that the liberty interest involved here is the interest in obtaining fair criminal proceedings before being denied one's liberty in the most traditional sense. *See Brady v. Maryland*, 474 U.S. 83, 87 … (1963) (holding that suppression by the

prosecution of evidence favorable to the defendant material to either guilt or punishment violates due process); *Napue [v. Illinois*, 360 U.S. 264, 269 (1959)] (holding that the use of false evidence against a criminal defendant violates due process and this principle is inherent in any concept of ordered liberty). "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady*, 373 U.S. at 87 ….

*Wilson*, 260 F.3d at 955 n.8.

The remaining cases Plaintiffs cite are similar. *See Winslow v. Smith*, 696 F.3d 716 (8th Cir. 2012) (after the plaintiffs received pardons for their murder convictions, they filed due process claims alleging that the defendants used false evidence, manufactured false evidence, and otherwise coerced them to plead guilty); *Amrine v. Brooks*, 522 F.3d 823 (8th Cir. 2008) (prisoner sued prison investigator and deputy sheriff under § 1983, alleging that they violated his constitutional rights during their investigation of a prison stabbing, for which the prisoner was convicted and sentenced, but later exonerated); *Morales v. Busbee*, 927 F. Supp. 254 (D.N.J. 1997) (plaintiff brought § 1983 malicious prosecution action against the defendant officers after dismissal of charges against the plaintiff "based upon mistaken identification"); *Schiller v. Strangis*, 540 F. Supp. 605 (D. Mass. 1982) (analyzing the plaintiff's substantive due process claim arising from his unlawful arrest in which excessive force was used); *Bullard v. City of New York*, 240 F. Supp. 2d 292 (S.D.N.Y. 2003) (plaintiffs brought suit for false arrest and malicious prosecution); *Maher v. Town of Ayer*, 463 F. Supp. 2d 117 (D. Mass.

2006) (the plaintiff filed § 1983 action alleging that he was wrongfully convicted and imprisoned for rapes he did not commit). Here, in comparison, Jonathon Manolios was never arrested, charged or prosecuted as a result of Defendants' alleged improper investigation.

The Court therefore concludes that Plaintiffs' due process claims based on Defendants' alleged improper investigation fail to state a claim upon which relief may be granted.[5] Plaintiffs' due process claims fare no better to the extent they are based on alleged harm to their reputations or the denial of a fair trial.

As to the latter, because Jonathan was never charged or tried for crimes arising from the accident, he was never denied a fair trial. Plaintiffs identify no other trial for which they were denied fair proceedings.

With respect to Plaintiffs' reputations, "[a]s the Supreme Court made clear in *Paul v. Davis*, 424 U.S. 693, 708-09, 96 S. Ct. 1155, 47 L.Ed.2d 405 (1976), there is no viable, free standing, federal due process claim arising from injury to one's reputation." *Jefferson v. Jefferson Cty. Public Sch. Sys.*, 360 F.3d 583, 586

---

[5] Prior to the motion hearing, the Court contemplated that Plaintiffs' due process claims were premised on Prudential's denial of coverage under the life insurance policy and their belief that the insurance benefits represented a protectable property interest for purposes of the Fourteenth Amendment. However, as Prudential in fact paid benefits to Plaintiffs, this cannot be Plaintiffs' theory of liability. In any event, the Court would find this injury too attenuated or unforeseeable for purposes of § 1983 liability and that Prudential's decision severed the causation between Plaintiffs' injury and Defendants' alleged wrongdoing. *See Powers v. Hamilton Cty. Public Defender Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007).

(6th Cir. 2004). "Such a claim is viable only in combination with two other elements: 'when there is some injury to employment in addition to damage to reputation and a subsequent denial of procedural due process to redress that injury.'" *Id.* (citing *In re Selcraig*, 705 F.2d 789, 796 (5th Cir.1983)). As the Court explained in *Paul*, defamatory publications alone—there, the public distribution of flyers titled "Active Shoplifters" that included the plaintiff's name and photograph—do not deprive an individual of any "liberty" or "property" interests protected by the Due Process Clause. 424 U.S. at 711-12.

For these reasons, the Court concludes that Plaintiffs' substantive and procedural due process claims must be dismissed.

## First Amendment Free Exercise Claim

Plaintiffs allege that their First Amendment right to practice their religion was violated when Defendants misidentified the location where Jonathon's body was found after the accident. The only conduct Plaintiffs allege in support of this claim, however, relates to Kennedy. Plaintiffs allege no conduct by any other defendant that interfered with the free exercise of their religion. Kennedy asserts that he is entitled to qualified immunity with respect to this claim.

Kennedy argues:

Outside of a custodial setting in which government officials are legally obligated to assist, aid, and accommodate prisoners' religious practices . . . no body of law clearly establishes the existence of a duty under which public officials must affirmatively assist an individual in

the practice of his or her religion in the manner he or she chooses by directing him or her to an appropriate place for such practice.

(ECF No. 15 at Pg ID 163-64.)  Kennedy further argues:

[N]either the Constitution nor supporting legal authorities provide a basis for a [First] Amendment religious practice claim against a police officer who gives poor directions to the nearest church, temple, or mosque, or who misreads a calendar and mistakenly advises that Christmas, Rosh Hashanah, or Eid is on Tuesday of this week rather than Thursday of next.

(*Id*. at Pg ID 164.)  To show in response that Kennedy's actions interfered with their clearly established constitutional rights, Plaintiffs cite to decisions addressing free exercise claims brought by inmates.  (*See* ECF No. 10 at Pg ID 241-43, citing *Cruz v. Beto*, 405 U.S. 319 (1972); *Wares v. Vanbebber*, 319 F. Supp. 2d 1237 (D. Kan. 2004).).)[6]

These prisoner cases do not provide clearly established law applicable to the situation confronted by Defendants.  The restriction on inmates' movement and access is what requires state actors to provide them with the means to practice their religious beliefs, although that obligation is limited by "the fact of incarceration" and "valid penalogical objectives."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  For example, inmates do not control the food they are served and thus the law imposes a duty on prison authorities to provide meals enabling inmates to adhere to their religious dietary beliefs.  Inmates generally lack the liberty to leave

---

[6] As a district court case outside the Sixth Circuit, this latter case does not provide clearly established law for purposes of this case.  *See Walton*, 995 F.2d at 1336.

prison to attend religious services, and thus the law imposes a duty on prison authorities to make services available for inmates of varying religious faiths. There is no clearly established law, however, requiring state actors to provide the same or similar offerings to non-incarcerated individuals. In other words, Plaintiffs cite no clearly established law (much less any case law) holding that state actors are required to affirmatively aid individuals outside the prison setting to practice their religion. Plaintiffs identify no decisions from the Supreme Court, Sixth Circuit, or another Circuit clearly establishing that Kennedy violated their First Amendment rights by failing to accurately identify where Jonathon's body was found after the accident.

Instead, what the First Amendment prohibits is the government's establishment of religion and interference with the free exercise of religion. *See Walz v. Tax Comm'n of the City of New York*, 397 U.S. 664, 669 (1970) (the determination of whether a particular government action would run afoul of the First Amendment "turn[s] on whether particular acts in question are intended to establish or interfere with religious beliefs and practices or have the effect of doing so"); *see also Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171, 183-85 (2012) (explaining the First Amendment's religion clauses); *Nikolao v. Lyon*, 238 F. Supp. 3d 964, 974-75 (E.D. Mich. 2017) (explaining the First Amendment's two religion clauses and setting forth the elements required to

prove a violation of each), *aff'd in part and vacated in part*, 875 F.3d 310 (6th Cir. 2017).  "The Sixth Circuit has held that the Free Exercise Clause is 'predicated on coercion.'"  *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017) (quoting *Mozert v. Hawkins Cty. Bd. of Educ.*, 827 F.2d 1058, 1066 (6th Cir. 1987) (additional quotation marks and citation omitted)).  "As such, a litigant suffers an injury to her free exercise rights when the state compels her 'to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion.'"  *Id*.  Kennedy's alleged conduct did nothing to establish religion or interfere with Plaintiffs' exercise of their religion.

Rather, the most that can be said of Kennedy's alleged misconduct is that it failed to aid Plaintiffs in the practice of their religion.  Plaintiffs did not know where Jonathon's body was found after the accident regardless of what Kennedy did or did not do.  As such, Plaintiffs could not have followed their religious obligation to memorialize that location even if Kennedy never provided the incorrect location.

In short, Plaintiffs identify no clearly establish law that would inform a reasonable official that the type of conduct alleged here violated Plaintiffs' right to freely exercise their religion.  For these reasons, the Court holds that Plaintiffs fail to state a viable First Amendment violation claim.

## Constitutional Right to Privacy

Plaintiffs' right to privacy claim is premised on Defendants' dissemination of information about Jonathon Manolios after the accident. (*See* Compl. ¶102, ECF No. 1 at Pg ID 32.) Specifically, Plaintiffs allege:

> By informing the general public that the Plaintiff's [sic] decedent had violated numerous and serious criminal laws which lead [sic] to the death of two of his friends and the injuring of two others, these Defendants have attributed characteristics or conduct of Plaintiffs [sic] that were false; i.e., under-aged drinking, intoxication and having committed the crime of drunk driving causing death.

(*Id*.) As indicated, Jonathon died in the accident. "A dead man retains no right to privacy after his death."[7] *Kiraly v. FBI*, 728 F.2d 273, 280 (6th Cir. 1984) (Merritt, J., concurring) (citing *Cordell v. Detective Publ'ns, Inc.*, 419 F.2d 989 (6th Cir. 1969) (right of privacy "lapses with the death of the person who enjoyed it.")). For that reason alone, Plaintiffs' privacy claim should be dismissed.

Further, however, the constitutional right to privacy does not extend to the type of information disseminated by Defendants. *See Bloch v. Ribar*, 156 F.3d 673, 683-84 (6th Cir. 1998) (describing the limited breadth of the constitutional right to privacy). As the *Bloch* court explained:

---

[7] There is precedent establishing that family members of the deceased have a privacy interest in controlling the body and death images of the deceased, *see e.g., Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004); however, the case here does not involve the handling of Jonathon's body or the dissemination of photographs of his body.

The Supreme Court in *Whalen v. Roe*, 429 U.S. 589, 97 S. Ct. 869, 51 L.Ed.2d 64 (1977), identified two legal principles developing out of the constitutional right to privacy that is rooted in the Fourteenth Amendment. The first principle protects an individual's right to make certain personal choices. This principle, for example, underscored the Supreme Court's rationale in *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L.Ed.2d 147 (1973). The other principle of privacy… protects an individual's right to control the nature and extent of information released about that individual. *See Whalen*, 429 U.S. at 599-600, 97 S. Ct. 869; *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457, 97 S. Ct. 2777, 53 L.Ed.2d 867 (1977) (noting that the right to privacy includes an "'individual interest in avoiding disclosure of personal matters'" (quoting *Whalen*, 429 U.S. at 599, 97 S. Ct. 869)); *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) (holding that undercover police officers, whose personal files had been released to a violent gang which they had infiltrated and were testifying against, possessed a privacy interest in preserving their lives, personal security, and bodily integrity).

This latter principle has been coined an informational right to privacy. Unlike many other circuits, this court has narrowly construed the holdings of *Whalen* and *Nixon* to extend the right to informational privacy only to interests that implicate a fundamental liberty interest. *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981); *see Kallstrom*, 136 F.3d at 1061 ("This circuit has read *Whalen* and *Nixon* narrowly, and will only balance an individual's interest in nondisclosure of informational privacy against the public's interest in and need for the invasion of privacy where the individual privacy interest is of constitutional dimension."). Specifically, *DeSanti* held the right to informational privacy will be triggered only when the interest at stake relates to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.' " *DeSanti*, 653 F.2d at 1090.

Accordingly, a constitutional right to nondisclosure of certain types of private information exists, but not all disclosures of private information will trigger constitutional protection. *DeSanti* requires the following two-step process for analyzing informational right-to-privacy claims: (1) the interest at stake must implicate either a fundamental right or one implicit in the concept of ordered liberty;

and (2) the government's interest in disseminating the information
must be balanced against the individual's interest in keeping the
information private. *Id*. at 1090-91.

*Bloch*, 156 F.3d at 683-84.  The Sixth Circuit has recognized a fundamental liberty

interest of constitutional dimension in only two instances: (1) where the release of

personal information could lead to bodily harm, *see Kallstrom*, 136 F.3d at 1061;

and (2) where the information released was of a sexual, personal, *and* humiliating

nature.  *See Bloch*, 156 F.3d at 684; *Lambert v. Hartmann*, 517 F.3d 443, 440 (6th

Cir. 2008) (affirming the dismissal of the plaintiff's constitutional right to privacy

claim based on dissemination of personal identifying information (including the

plaintiff's social security number) on a traffic citation published on the county's

public website, concluding that no fundamental right was infringed).  Neither of

these two types of privacy interests were implicated by Defendants' alleged

actions.

Accordingly, the Court finds that Defendants are entitled to dismissal of

Plaintiffs' right of privacy claim.

## Equal Protection

In support of their equal protection claim, Plaintiffs allege *inter alia*:

That based on the personal animus and/or actions or inactions of these
Defendants as outlined above, these Defendants did not apply the
facts of this case equally as to the participants when they steered the
investigation wrongfully towards Jonathan Manolios instead of the
true driver of the vehicle.

(Compl. ¶ 67, ECF No. 1 at Pg ID 23.)  Asked to clarify the claim at the motion

hearing, Plaintiffs' counsel explained that Jonathan was not granted the same

protection under the law afforded to Narra.

The Sixth Circuit has held that a plaintiff can state a valid cause of action

under the Fourteenth Amendment's Equal Protection Clause based on police

officers' failure to fulfill their duty to enforce the laws equally and fairly.  *See*

*Neighborhood Action Coalition v. Canton, Ohio*, 882 F.2d 1012, 1017 (6th Cir.

1989); *Smith v. Ross*, 482 F.2d 33, 36 (6th Cir. 1973).  The Sixth Circuit also has

stated, however, that "[t]he failure to conduct a full and fair investigation and

prosecution of an alleged crime does not state a claim unless there is a violation of

another recognized constitutional right."  *Smallwood v. McDonald*, No. 86-5522,

1986 WL 18183, at *1 (6th Cir. Oct. 9, 1986) (citing *Gomez v. Whitney*, 757 F.2d

1005, 1006 (9th Cir. 1985) (per curiam)).  There must be some unequal or unfair

enforcement of the laws.  *Neighborhood Action Coalition*, 882 F.2d at 1017

(failure to respond to call from a neighborhood because of the racial make-up of

the neighborhood).

Plaintiffs do not allege that Defendants steered their investigation towards

Jonathon based on some suspect classification (e.g., his race or ethnicity).  Instead,

Plaintiffs claim Defendants' investigation was influenced by Abro's relationship to

the Narra family.  In that instance, Plaintiffs must allege some other violation of

Jonathon's constitutional rights, such as wrongful prosecution. *See, e.g. Fisher v. City of Cincinnati*, 753 F. Supp. 681, 687 (S.D. Ohio 1990); *Mooneyhan v. Hawkins*, No. 96-6135, 1997 WL 685423, at *6 (6th Cir. Oct. 29, 1997) (dismissing the plaintiff's § 1983 equal protection claim against defendant-officers based on their alleged cover-up of the plaintiff's rape by an off-duty police officer where the police did not charge the plaintiff with any crime and thus she could not claim unequal enforcement of the law). They do not.

What Plaintiffs seem to be asserting is an equal protection claim under a "class-of-one" theory. The Supreme Court laid out the basic requirements for a valid class-of-one claim in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). The plaintiff must allege "that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. The Court finds two reasons why Plaintiffs' allegations fail to state a viable claim under this theory.

First, Plaintiffs do not allege facts establishing Defendants' unequal application of the law to Jonathan. Defendants did not ticket or prosecute Jonathan and treat the other occupants of the vehicle differently. Second, the facts alleged reflect that the officers had a rational basis for identifying Jonathon as the driver during their investigation of the accident. Specifically, as Plaintiffs acknowledge in their Complaint, Bobchick told the police that Jonathon was driving. (Compl.

¶ 31, ECF No. 1 at Pg ID 12-13.)  While Plaintiffs question the veracity of

Bobchick's statement and whether Defendants should have credited it, the

statement does offer a rational basis for Defendants' investigation of Jonathon as

the driver.  *See Aldridge v. City of Memphis*, 404 F. App'x 29, 43 (6th Cir. 2010)

(quoting *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty.*, 430 F.3d 783 (6th Cir.

2005) ("'governmental action subject to equal protection scrutiny under the

rational basis test must be sustained if *any* conceivable basis rationally supports

it.'").

The Supreme Court's decision in *Engquist v. Oregon Department of

Agriculture*, 553 U.S. 591 (2008), also supports dismissal of Plaintiffs' equal

protection claim.  In *Engquist*, the Court held that "the class-of-one theory of equal

protection has no application in the public employment context", *id*. at 606,

because the theory was a "poor fit" in a context that involved discretionary

decisionmaking.  *Id*. at 605.  The *Engquist* Court used law enforcement officers to

illustrate the forms of state action that "by their nature involve discretionary

decisionmaking":

> There are some forms of state action, however, which by their
> nature involve discretionary decisionmaking based on a vast array of
> subjective, individualized assessments. In such cases the rule that
> people should be "treated alike, under like circumstances and
> conditions" is not violated when one person is treated differently from
> others, because treating like individuals differently is an accepted
> consequence of the discretion granted. In such situations, allowing a
> challenge based on the arbitrary singling out of a particular person

would undermine the very discretion that such state officials are entrusted to exercise.

Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself—the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

*Id*. at 603-04.  While the Sixth Circuit has not extended the holding in *Engquist* beyond the public employment context, Defendants' decisions as to how to investigate the accident do not seem properly subjected to a class-of-one theory based on the rationale applied by the Supreme Court in that case.  *See Flowers v. City of Minneapolis*, 558 F.3d 794, 799-800 (8th Cir.) ("In light of *Engquist*, therefore, we conclude that while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim."), *reh'g & reh'g en banc denied*

(8th Cir. 2009); *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008)

(applying *Engquist* to bar class-of-one claims challenging prosecutorial decisions);

*Vassallo v. Lando*, 591 F. Supp. 2d 172, 187-89 (E.D.N.Y. 2008) (extending

*Engquist* to the defendants' decision to question and search a student for evidence

of criminal activity).

For these reasons, the Court concludes that Plaintiffs fail to allege a viable

equal protection claim in their Complaint.

## Access to the Courts

"'It is beyond dispute that the right of access to the courts is a fundamental

right protected by the Constitution.'" *Swekel v. City of River Rouge*, 119 F.3d

1259, 1261 (6th Cir. 1997) (quoting *Graham v. Nat'l Collegiate Athletic Ass'n*,

804 F.2d 953, 959 (6th Cir. 1986)). The right "in its most formal manifestation

protects a person's right to physically access the court system." *Id*. at 1262. It also

guarantees, however, access that is "'adequate, effective and meaningful.'" *Id*.

(quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977)). "Therefore, if a party

engages in actions that effectively cover-up evidence and this action renders a

plaintiff's state court remedy ineffective, they have violated his right of access to

the courts." *Id*.

In *Swekel*, the plaintiff claimed that the defendant city officials covered up

the identity of the driver of a vehicle that possibly struck and killed the plaintiff's

husband while he was crossing the street because the driver was the son of a high-ranking police officer. 119 F.3d at 1260. The Sixth Circuit affirmed the district court's dismissal of the plaintiff's access-to-the-courts claim, finding no evidence that the defendants' actions barred the plaintiff from filing suit or rendered the filing of a suit ineffective. *Id*. at 1264. The court identified several facts to consider in deciding whether the plaintiff has stated a viable claim:

> First, a court must ascertain whether the abuse occurred pre- or post-filing. When the abuse transpires post-filing, the aggrieved party is already in court and that court usually can address the abuse, and thus, an access to courts claim typically will not be viable.[] If the abuse occurs pre-filing, then the plaintiff must establish that such abuse denied her "effective" and "meaningful" access to the courts. *Bounds*, 430 U.S. at 822, 97 S. Ct. at 1495. She can do this only by showing that the defendants' actions foreclosed her from filing suit in state court or rendered ineffective any state court remedy she previously may have had. *See Crowder [v. Sinard*, 884 F.2d 804, 821-12 (5th Cir. 1989)]; *Bell [v. Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984)]; *Ryland [v. Shapiro*, 708 F.2d 967, 974-75 (5th Cir. 1983)].

*Id*. at 1263-64 (footnote omitted).

In the present case, Plaintiffs' allegations fail to identify what specific court access they were denied as a result of any action(s) by Defendants. The Court's quest for clarification at the motion hearing failed to elucidate the access Plaintiffs claim they have been denied. Because Plaintiffs' allegations do not assert how Defendants' actions deprived them of meaningful or effective access to the courts, the Court is dismissing this claim.

## Claims Alleging Failure to Intervene, Supervisory Liability, Conspiracy, and Municipality Liability

As set forth above, Plaintiffs fail to establish liability on behalf of any defendant for any constitutional violation. This conclusion defeats Plaintiffs' remaining § 1983 claims alleging liability for failing to intervene, supervisory and municipal liability, and conspiracy.[8] *See Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 856 (6th Cir. 2016) ("As with supervisory liability, a municipality can be liable under § 1983 only if there is some underlying constitutional violation for which it could be held responsible.");

*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers."); *Simmons v. Napier*, 626 F. App'x 129, 139 (6th Cir. 2015) (finding no error in the district court's refusal to instruct on the plaintiff's failure-to-intervene theory where the jury found no underlying constitutional violation); *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 412 (6th Cir. 2015) ("because there is no underlying constitutional violation, [the defendant] may not be liable for failure to intervene"); *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009) (citations omitted) (holding that the plaintiff "cannot

---

[8] As such, even though Macomb County has not filed a motion to dismiss, the Court is *sua sponte* dismissing Plaintiffs' § 1983 claims against it.

succeed on a conspiracy claim because there was no underlying constitutional violation that injured her.").

## State Law Claims

This Court has supplemental jurisdiction over Plaintiffs' various state law claims pursuant to 28 U.S.C. § 1367(a). The statute grants district courts the discretion to decline to exercise supplemental jurisdiction where *inter alia* "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

The Supreme Court and Sixth Circuit have advised district courts deciding whether to retain jurisdiction over state-law claims to consider and weigh several factors, including the "values of judicial economy, convenience, fairness, and comity." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The court may also consider whether the plaintiff has engaged in any manipulative tactics. *Id.* at 952. "'When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.'" *Id*. (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("As a rule of thumb … [w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.")).

Nevertheless, the Sixth Circuit advises that "[t]here are … circumstances where a district court should retain supplemental jurisdiction even if all of the underlying federal claims have been dismissed." *Gamel*, 625 F.3d at 952. As an example, the *Gamel* court cited *Harper v. AutoAlliance International, Inc.*, 392 F.3d 195 (6th Cir. 2004). In *Harper*, the court found that the following factors weighed in favor of retaining supplemental jurisdiction despite the dismissal of all federal claims: (1) the plaintiff had engaged in forum manipulation by deciding to dismiss his federal law claims only after the case had been on the court's docket for 11 months; (2) the defendants' summary judgment motions were ripe for decision; and (3) the parties had completed discovery. *Harper*, 392 F.3d at 211-12. Moreover, the district court was "familiar with the facts of the case and already had invested significant time in the litigation." *Id*.

Unlike *Harper*, the present case is at the pleadings stage, there is no evidence of forum manipulation, no scheduling order has issued, discovery has not begun, and the Court has not invested significant time or resources in the litigation besides addressing the pending motions to dismiss. On the other hand, the interest of comity and deference to state courts strongly counsel that Plaintiffs' state law claims proceed in state court.

For these reasons, having concluded that Plaintiffs' federal claims are subject to dismissal under Rule 12(c), the Court declines to exercise supplemental jurisdiction over their state law claims.

## Conclusion

In summary, the Court holds that Plaintiffs' § 1983 claims alleging violations of their constitutional rights (Counts I-IX) fail to state claims upon which relief may be granted. The Court, therefore, **GRANTS** Defendants' Rule 12(c) motions to dismiss those claims and is *sua sponte* dismissing those claims against Macomb County. Counts I-IX of Plaintiffs' Complaint are **DISMISSED WITH PREJUDICE**. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims (Counts XI-XV) and is **DISMISSING** those claims **WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: June 13, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, June 13, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager